# United States Court of Appeals
## For the First Circuit

No. 04-1630

MARCOS MERCADO AND SUZANNE HEBERT-JOMP,

Plaintiffs, Appellants,

v.

THE RITZ-CARLTON SAN JUAN HOTEL, SPA & CASINO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. Garcia-Gregory, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Godwin Aldarondo-Girald for appellants.
James W. McCartney with whom Cancio, Nadal, Rivera & Díaz was
on brief for appellee.

May 31, 2005

**COFFIN, Senior Circuit Judge.** Appellants Marcos Mercado and Suzanne Hebert-Jomp claim that they experienced unlawful discrimination while working at the Ritz-Carlton San Juan Hotel, Spa & Casino ("Ritz-Carlton"), and they brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and similar Puerto Rico laws. To sue under Title VII, individuals must have filed a charge with the Equal Employment Opportunity Commission ("EEOC") within a specified time after the alleged unlawful practices occurred. See id. § 2000e-5(e)(1). Appellants did not file their charges within the statutory period, and the district court dismissed their claims on that ground. On appeal, appellants assert that the court erred in refusing to give them the benefit of equitable tolling. As we shall explain, we conclude that appellants are entitled to factual development of their tolling claim, and we therefore vacate the dismissals and remand for further proceedings.

## I. Background

This suit was filed by appellants and a co-worker, Sandra Megwinoff, each of whom alleged different instances of discriminatory conduct on the part of their Ritz-Carlton supervisors. Appellant Mercado claimed discrimination on the basis of national origin; appellants Hebert and Megwinoff both alleged sexual harassment, as well as gender and national origin discrimination; Megwinoff additionally asserted age discrimination.

-2-

All three employees, who began working at the hotel in 1997, claimed that their unlawful treatment and "unsustainable working conditions" forced them to resign from their jobs in 1999.[1] The three employees met with an attorney on November 11, 1999, and filed charges with the EEOC on December 14, 1999.

It is undisputed that Mercado's and Hebert's filings were untimely. Under Title VII, they were required to file charges with the EEOC within 300 days after the allegedly unlawful practice, see 42 U.S.C. § 2000e-5(e)(1),[2] and the most generous calculation of the trigger date renders Mercado's filing 32 days late and Hebert's 23 days late.[3] The EEOC, without making either a determination on the merits or a finding on timeliness, issued all three plaintiffs right-to-sue letters. They filed their joint suit in March 2003,

---

[1] Mercado and Hebert resigned in January 1999; Megwinoff resigned on November 1, 1999.

[2] Because Puerto Rico is a so-called "deferral jurisdiction," the 300-day period, rather than a shorter 180-day filing period, is applicable. See Lebron-Rios v. U.S. Marshal Serv., 341 F.3d 7, 11 n.5 (1st Cir. 2003); Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 n.4 (1st Cir. 1999).

[3] For purposes of this appeal, Ritz-Carlton accepts the effective dates of appellants' terminations as the trigger dates for the statutory filing period: January 15, 1999, for Mercado, and January 24, 1999, for Hebert. Ritz-Carlton has noted, however, that the dates of their resignation letters, rather than the effective date of the resignations, arguably should be considered the starting point, in which case the filings would be even more untimely. We offer no view on the appropriate start date, assuming for purposes of this appeal, as did Ritz-Carlton, that the actual resignation dates are the applicable ones.

and Ritz-Carlton subsequently filed a motion seeking dismissal of Mercado's and Hebert's claims based on their untimely EEOC charges.

In their opposition to the dismissal motion, appellants contended first that the timeliness defense was waived because it had not been raised before the EEOC. In addition, they claimed that Ritz-Carlton was barred from asserting timeliness as a defense because the hotel failed to comply with EEOC regulations requiring employers to post notices advising employees of their legal rights relating to employment discrimination. See 42 U.S.C. § 2000e-10(a).[4] Invoking the doctrine of equitable tolling, appellants claimed that the filing period did not begin to run until they received notice of their rights when they met with an attorney.

The district court rejected appellants' arguments and concluded that it lacked jurisdiction to consider the merits of their claims because of the late EEOC filings. The court reasoned that the equitable tolling doctrine may be utilized only when there is "active misleading" on the part of the employer, and it held that Ritz-Carlton's failure to post the mandatory notices was insufficient to satisfy that standard. The court implicitly

---

[4]Section 2000e-10 provides, in pertinent part, that an employer "shall post . . . in conspicuous places upon its premises . . . a notice to be prepared or approved by the [EEOC] setting forth excerpts from or, summaries of, the pertinent provisions of this subchapter and information pertinent to the filing of a complaint." See also 29 C.F.R. § 1601.30(a) ("Such notice must be posted in prominent and accessible places where notices to employees, applicants and members are customarily maintained.").

rejected appellants' argument that Ritz-Carlton had waived the timeliness issue by failing to raise it with the EEOC, noting that the agency's issuance of right-to-sue letters did not insulate the filing defect from independent evaluation by the court.

On appeal, Mercado and Hebert reiterate both their waiver and equitable tolling arguments. We first briefly address the threshold question of waiver, along with Ritz-Carlton's contention that the appeal is premature, and then turn to the equitable tolling doctrine.

## II. Discussion

### A. Waiver

Appellants contend that Ritz-Carlton waived the timeliness defense by failing to bring the issue to the attention of the EEOC; they claim it was raised for the first time in Ritz-Carlton's motion for partial dismissal in the district court. Appellants are wrong both legally and factually.

First, appellants offer no support for their assertion that the failure to initially raise the defense before the EEOC was fatal, given that the EEOC did not reach a decision on the merits. Both of their cited cases involve instances in which parties belatedly sought to rely in court on procedural flaws that had not been raised in earlier administrative proceedings that reached substantive outcomes. See United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 36-38 (1952); Ester v. Principi, 250 F.3d 1068

(7th Cir. 2001).  In <u>Ester</u>, the Seventh Circuit held that an agency waives a timeliness defense in a subsequent lawsuit if it decides the merits of a complaint, but noted the court's adherence to "the well-settled rule that agencies do not waive a timeliness defense merely by accepting and investigating a discrimination complaint." <u>Id.</u> at 1072 n.1 (citing Fifth, Ninth and D.C. Circuit cases); <u>see also</u> <u>Belgrave</u> v. <u>Pena</u>, 254 F.3d 384, 387 (2d Cir. 2001); <u>cf.</u> <u>Bruce</u> v. <u>U.S. Dep't of Justice</u>, 314 F.3d 71, 74-75 (2d Cir. 2002) (concluding that timeliness defense was waived where a government agency made "an express determination that [a complaint] was timely based on a specific factual finding").  We find that principle to be applicable here, where the EEOC issued right-to-sue letters without reaching the merits of appellants' claims.

Nor did appellee belatedly raise the claim in the district court.  In its answer to appellants' complaint, Ritz-Carlton asserted as its initial affirmative defense that "[t]he claims alleged in the plaintiffs' complaint are partially and/or totally barred by the applicable statute of limitations and/or jurisdictional time frames."  Although conclusory, this assertion adequately identified the issue.  The subsequent motion for partial dismissal elaborated on the untimeliness defense by setting out the argument that Mercado and Hebert exceeded the 300-day statutory period for filing a charge with the EEOC.  Thus, contrary to appellants' contention, the issue was raised by Ritz-Carlton at its

first opportunity in the litigation and it was thus fully preserved.

B. Rule 54(b)

Ritz-Carlton, meanwhile, seeks dismissal of the appeal as premature. It argues that no final, appealable judgment has been rendered because the district court has not yet resolved the case of their co-plaintiff, Megwinoff. Although the district court certified the judgments with respect to Mercado and Hebert as final under Fed. R. Civ. P. 54(b), finding that there is "no just reason for delay," see, e.g., Quinn v. Boston, 325 F.3d 18, 26 (1st Cir. 2003), Ritz-Carlton claims the court erred in doing so. The hotel maintains that the equities counsel against a "piecemeal appeal."

The district court did not explain its Rule 54(b) decision, but we think it sufficiently apparent why it acted as it did.[5] If the court's ruling dismissing Mercado's and Hebert's claims proved to be incorrect, the most efficient course of action would be for all three employees' claims to proceed together. Although their individual factual contentions and theories vary, the same general environment is at issue and at least some witnesses would be expected to testify on each case. By certifying the judgments

_____

[5] We do not condone the lack of explicit findings and the reasoning underlying the court's certification, see Quinn v. Boston, 325 F.3d 18, 26 (1st Cir. 2003); Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 43-44 (1st Cir. 1988), but conclude that this is a case in which the circumstances plainly support an appeal from the partial judgment. See Quinn, 325 F.3d at 26.

against Mercado and Hebert as final and allowing this court to review the discrete legal issue underlying them without delay, the district court was maximizing the potential for the most expeditious resolution of the entire case. We see no error in this approach.

We thus turn to the substance of the appeal.

C. Equitable Tolling

Appellants contend that their late filing of charges with the EEOC should be forgiven under the doctrine of equitable tolling because of Ritz-Carlton's failure to post statutorily mandated notices of their employment rights.[6] As noted earlier, the district court rejected this excuse. The court relied on a line of precedent describing equitable tolling as a narrow doctrine "reserved for exceptional cases," see Chico-Velez v. Roche Prods., Inc., 139 F.3d 56, 58-59 (1st Cir. 1998), and permitted "only where the employer has actively misled the employee," Thomas v. Eastman Kodak Co., 183 F.3d 38, 53 (1st Cir. 1999).

---

[6] The filing requirement is mandatory but not jurisdictional and, like a statute of limitations, is subject to equitable exceptions. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005); Bonilla, 194 F.3d at 278. Ritz-Carlton has acknowledged that, as a consequence of that precedent, its motion to dismiss the Title VII claims for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is more properly considered a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Accordingly, we treat it as such.

The district court correctly identified "[t]he baseline rule . . . that time limitations are important in discrimination cases, and that federal courts therefore should employ equitable tolling sparingly," Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002). After careful review of the case law, however, we conclude the court erred in utilizing the "actively misled" standard in the context of a failure-to-post claim.

While an employer's affirmative misconduct provides one rationale for extending the filing period, we have recognized that an employer's violation of the EEOC posting requirement may provide a second basis for an extended filing period "where the employee had no other actual or constructive knowledge of [the] complaint procedures," Earnhardt v. Commonwealth of Puerto Rico, 691 F.2d 69, 72 (1st Cir. 1982).[7] In Earnhardt, we first discussed plaintiff's contention that his employer's silence in the face of inquiries prevented him from learning that his discharge stemmed from discrimination, resulting in his untimely EEOC filing. See 691

---

[7] Although a number of the cases we cite for this proposition involved the ADEA, rather than Title VII, we have held repeatedly that "the ADEA and Title VII 'stand[] in pari passu' and that 'judicial precedents interpreting one such statute [are] instructive in decisions involving [the other],'" Camacho v. P.R. Ports Auth., 369 F.3d 570, 578 n.5 (1st Cir. 2004) (quoting Serapion v. Martinez, 119 F.3d 982, 985 (1st Cir. 1997)); see also Earnhardt v. Commonwealth of Puerto Rico, 691 F.2d 69, 72 (1st Cir. 1982) ("[C]ourts often accept ADEA precedents as persuasive interpretations of similar provisions appearing in Title VII."). We continue that approach here.

F.2d at 71-72. We rejected this basis for tolling because "equitable modification is appropriate only where the employer actively misled the employee concerning the reasons for the discharge." Id. at 71. We then separately addressed plaintiff's argument that the failure to post statutory notice excused his untimely filing and remanded for inquiry into the facts concerning, inter alia, the plaintiff's knowledge. We thus treated the employer's violation of the posting duty as a possible alternative path to equitable tolling, an approach we adopted again in subsequent cases. See Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 752-53 (1st Cir. 1988) (where an employee's ignorance of his statutory rights "is caused . . . by failure of that employer to conspicuously post the informational EEOC notices . . . , there may be a valid claim for equitable tolling"); Cano v. U.S. Postal Serv., 755 F.2d 221, 222-23 & n.5 (1st Cir. 1985) (per curiam).[8]

---

[8] Ritz-Carlton attempts to blur the distinction between the two different bases for equitable tolling by quoting, out of context, our statement in Thomas v. Eastman Kodak Co., 183 F.3d 38, 53 (1st Cir. 1999), that "First Circuit law permits equitable tolling only where the employer has actively misled the employee." Viewed in context, it is clear that the "active misleading" requirement applies when the employee invokes equitable tolling based on lack of knowledge of the reasons for the adverse action – and not when the employer effectively has prevented the plaintiff from learning of his legal rights by failing to post the required notice. In asserting the First Circuit standard, Thomas relied on two earlier cases involving claims that employees lacked knowledge of the employer's discriminatory motivation. See Jensen v. Frank, 912 F.2d 517, 521 (1st Cir. 1990) (plaintiff could only qualify for equitable tolling if he could demonstrate "not only that he had no reason to be aware of his employer's improper motivation when the putative violation occurred, but also that the employer actively

-10-

Many other courts similarly view lack of notice as adequate justification for equitable tolling. See, e.g., Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) (rejecting equitable tolling because "[t]his is not a case in which a claimant has received inadequate notice" or where "affirmative misconduct on the part of a defendant lulled the plaintiff into inaction"); EEOC v. Ky. State Police Dep't, 80 F.3d 1086, 1096 (6th Cir. 1996) ("If an employer fails to comply with § 627 by not posting the required ADEA notices, 'the charge-filing period will not begin to run until the employee either retains an attorney or acquires actual knowledge of his rights under the ADEA.'"); Unterreiner v. Volkswagen of Am., 8 F.3d 1206, 1209 (7th Cir. 1993) ("Under some circumstances, a company's failure to post a notice of employees' rights under the ADEA may toll the statute of limitations."); Callowhill v. Allen-Sherman-Hoff Co., 832 F.2d 269, 272 (3rd Cir. 1987) ("[A]n employer's neglect to post the notice . . . will toll the running of the period for filing the administrative charges, at least until the 'aggrieved person seeks out an attorney or acquires actual knowledge of his rights under the [ADEA]'"); English v.

---

misled him and that he relied on the (mis)conduct to his detriment"); Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 185 (1st Cir. 1989) (no equitable tolling because no active deception in company's failure to post job openings). In short, our case law reflects two distinct lines of cases applying two distinct standards to two distinct bases for equitable tolling. As we explain infra, the failure to post notice of legal rights triggers a "totality of the circumstances" kind of review.

-11-

<u>Pabst Brewing Co.</u>, 828 F.2d 1047, 1049 (4th Cir. 1987) ("If an employer violates the posting requirement, the charging period is tolled until the plaintiff 'acquires actual knowledge of his rights or retains an attorney.'"); <u>but</u> <u>see</u> <u>Wilkerson</u> v. <u>Siegfried Ins.</u> <u>Agency</u>, 683 F.2d 344, 347 (10th Cir. 1982) (stating that failure to post EEOC notices will not toll absent employer's "intent to actively mislead the plaintiff").

Here, where appellants have asserted that no informational notices were posted and that they had no knowledge of their legal rights until informed by their attorney,[9] they have met the threshold requirements for avoiding dismissal of their Title VII suit. <u>See</u> <u>Kale</u>, 861 F.2d at 753 ("If . . . the employee has no knowledge of his rights and his ignorance is due to misleading conduct by the defendant <u>or</u> failure of the defendant to post the

---

[9] We note that appellants made these assertions not in their complaint but in sworn statements submitted in response to Ritz-Carlton's motion for partial dismissal, and we further note that the district court referred to the failure-to-post allegation in its decision. Although a court's consideration of materials outside the pleadings typically converts a motion to dismiss into one for summary judgment, <u>see</u> Fed. R. Civ. P. 12(b); <u>Greene</u> v. <u>Rhode Island</u>, 398 F.3d 45, 48 (1st Cir. 2005), an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim "'[i]n an appropriate case,'" <u>Greene</u>, 398 F.3d at 49 (quoting <u>In re Colonial Mortgage Bankers Corp.</u>, 324 F.3d 12, 16 (1st Cir. 2003)). We need not dwell on whether the district court properly looked beyond the pleadings in this case. The bottom line is that the court made a legal error in viewing "active misleading" as a prerequisite to equitable tolling and, as we shall discuss, factual issues pertinent to the tolling question thus remain. Judgment of dismissal, however framed, was therefore premature.

required EEOC notices, then an initial case for equitable tolling has been made.") (emphasis added).  The viability of their claims beyond that preliminary stage will depend, however, upon facts that have yet to be developed.

Courts generally weigh five factors when considering whether to allow equitable tolling in a particular case: "'(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the [filing] requirement.'"  Kelley v. N.L.R.B., 79 F.3d 1238, 1248 (1st Cir. 1996) (quoting Kale, 861 F.2d at 752).  These factors are not exhaustive, however; "[i]t is in the nature of equity to entertain case-specific factors that may counsel in favor of tolling." Kale, 861 F.2d at 753 n.9.

The factual inquiry in this case thus must begin with an examination of whether – despite their assertion of ignorance – appellants had either actual or constructive knowledge of their Title VII rights within the meaning of our case law.  Actual knowledge does not mean specific awareness of the 300-day statutory filing period; rather, actual knowledge occurs when an employee becomes generally aware that he possesses a legal right to be free from the type of discrimination he has alleged.  Kale, 861 F.2d at 753 ("Once an employee is 'generally aware of his legal right to

obtain redress for that wrong . . . , he possesses sufficient knowledge to enable him to vindicate his rights[,] if he so desires.'") (quoting McClinton v. Ala. By-Products Corp., 743 F.2d 1483, 1486 (11th Cir. 1984)).[10] Constructive knowledge, meanwhile, would be presumed if the employer had complied with its statutory obligation to post the EEOC notices in conspicuous locations, and it also is presumed when an employee has retained an attorney – in both instances, regardless of whether the plaintiff in fact is aware of his rights. Id.

Factual development may well show that appellants possessed sufficient knowledge to entitle Ritz-Carlton to summary judgment.

---

[10] We elaborated in Kale as follows:

> [E]quitable tolling is not properly invoked where a plaintiff alleges mere ignorance of a specific provision contained in a statute. Instead, ignorance in the context of equitable tolling under the ADEA, means ignorance of the unlawfulness of the defendant's conduct that is proscribed by the statute. Equity only requires that a plaintiff be aware that a statute has been passed that protects workers against age discrimination. It does not require that he know of all the filing periods and technicalities contained in the law. . . . Thus, a plaintiff who is aware of his ADEA rights but unaware of the filing deadlines cannot, without more, invoke the doctrine of equitable tolling.

861 F.2d at 754. See also, e.g., Schroeder v. Copley Newspaper, 879 F.2d 266, 271 (7th Cir. 1989) ("The information [plaintiff] needed to know before filing a charge was straightforward: that it was unlawful to discriminate on the basis of age, and that he was required to file a charge with the EEOC to pursue a discrimination claim."); Clark v. Resistoflex Co., 854 F.2d 762, 769 (5th Cir. 1988) (plaintiff need only have general knowledge of his ADEA rights "'or the means of obtaining such knowledge'") (quoting McClinton, 743 F.2d at 1486).

-14-

Ritz-Carlton argued below that the required notices had been posted, a factual assertion that the district court could not credit in the context of a motion to dismiss. In addition, appellants admit receiving Ritz-Carlton's "Ladies & Gentlemen's Handbook," which they say contains a "general 'Equal Employment Standard' and a 'Sexual Harassment Policy.'" If the handbook advises employees that they have a right under Title VII to seek redress in the event of gender or national origin discrimination, appellants may be deemed to have notice sufficient to foreclose equitable tolling. Their sworn statements also refer to complaints they lodged with the hotel about discriminatory treatment. These complaints may or may not reflect knowledge of their statutory rights; if the handbook simply advised about company policy without reference to the availability of legal redress, for example, these internal complaints may signal neither actual nor constructive knowledge of their Title VII rights.[11]

The next point of inquiry – appellants' diligence in pursuing their rights – also needs factual development. Appellants did not consult with an attorney until nearly ten months after leaving their jobs. Appellants suggest that they were unaware for those months that they had a right to seek redress for discrimination;

_____

[11] We note that the complaint specifically alleges that Hebert spoke to her supervisor about "the illegality of his discriminatory conduct," but the significance of this allegation needs to be assessed in context.

-15-

whether their eventual visit to an attorney was prompted by new information or reflected long-standing general awareness of a potential claim is also relevant. Appellants met with the attorney one day before the 300 days had run for Mercado and ten days before it had run for Jomp, but their charges were not filed with the EEOC until 33 days later. Did this reflect diligence under the circumstances? See, e.g., Callowhill, 832 F.2d at 270-71, 274 (noting that plaintiffs promptly filed charges after retaining counsel; longest time lapse was eleven days).

These questions and others bearing on the appropriateness of equitable relief, including possible prejudice to the defendants and appellants' reasonableness in remaining ignorant of the 300-day filing period, must be considered before a judgment may be made on appellants' request for tolling. Moreover, in evaluating appellants' claims, the district court may need to address the unresolved issue of the start date for the filing period, a question outside the scope of this appeal. See supra note 3. We have given no consideration to that question and intimate no view as to its outcome or, for that matter, its relevancy in the particular context of this case.

We therefore vacate the dismissal of appellants' claims and remand the case for further proceedings consistent with this opinion.[12]

Vacated and remanded.

---

[12] At oral argument, appellants' attorney argued that his clients were "actively misled" by Ritz-Carlton based on facts unrelated to the failure to post notice. That view was not argued in appellants' brief, and it therefore is not before us. See, e.g., Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 114 n.1 (1st Cir. 2004) (issues not raised in an opening brief on appeal are waived).